# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>Henry W. Sutton and<br>Tabatha L. Sutton,<br><br>    Debtor. | Case No. 22-15040-JGR<br>Chapter 13 |
| Henry W. Sutton and<br>Tabatha L. Sutton,<br><br>    Plaintiffs,<br>v.<br><br>Michael D. Nordike,<br><br>    Defendant. | Adv. Pro. No. 23-1014-JGR |

## OPINION AND ORDER

    The automatic stay imposed by 11 U.S.C. § 362 protects debtors by enjoining prepetition civil litigation. Thus, violations of the automatic stay are strictly policed to ensure that honest and unfortunate debtors are given breathing space and a fair opportunity to obtain a fresh start at rebuilding their lives. Henry W. Sutton and Tabatha L. Sutton accuse Michael D. Nordike of violating the automatic stay by refusing to immediately withdraw his pending motion for contempt in a prepetition state court action and sending a series of allegedly threatening emails to their bankruptcy counsel, after he became aware of their bankruptcy filing. The questions presented are whether a creditor's failure to immediately vacate a state court contempt hearing and whether a contentious email exchange between a creditor and debtor's bankruptcy counsel violate 11 U.S.C. § 362.

## INTRODUCTION

    Henry W. Sutton ("Mr. Sutton") and Tabatha L. Sutton ("Mrs. Sutton")(collectively the "Suttons") sought bankruptcy relief under Chapter 13 on December 28, 2022 (Main Case Doc. 1). The Suttons filed the within adversary proceeding against judgment creditor Michael D. Nordike ("Nordike") on January 21, 2023.

The Suttons' amended complaint alleges that Nordike violated 11 U.S.C. § 362(a) by (i) causing a contempt citation to issue; (ii) refusing to withdraw the contempt motion; (iii) insisting that the Suttons answer interrogatories; (iv) scheduling the March 9, 2023 contempt hearing; and (v) continuing to pursue collection of a debt. The Suttons seek actual damages including compensation for emotional distress, punitive damages, and attorney's fees and costs. Nordike denies these allegations.

The Court held a one-day trial on March 5, 2025, at which the Suttons and Nordike testified and exhibits were admitted.

## BACKGROUND

In 2012, Nordike rented a single-family home to the Suttons. The lease was renewed yearly until 2015. After six months of non-payment of rent, Nordike evicted the Suttons. Post-eviction, Nordike found the home was left in poor condition and required extensive repairs, costing $23,000. The Court notes the damage was extensive.

Nordike brought a civil action in state court against the Suttons to obtain a judgment for the unpaid rent and reimburse him for the cost of the repairs. After a trial, the state court awarded Nordike damages, fees, and unpaid rent in the total amount of $16,752.75, plus statutory interest. Following the judgment, Nordike served, and the Suttons answered, a first set of post-judgment interrogatories. Nordike attempted to garnish the Suttons' bank accounts at USAA, but no accounts were located.

Thereafter, Nordike attempted to serve the Suttons with a second round of post-judgment interrogatories. The Suttons did not answer these interrogatories, and Nordike initiated the first contempt proceeding on March 4, 2022. The state court ordered the Suttons to answer the post-judgment interrogatories, but responses were not submitted. Nordike initiated a second contempt proceeding and a hearing was held in state court on December 8, 2022, during which the Suttons agreed they would submit their answers to the interrogatories in early January 2023 and a hearing was scheduled for January 5, 2023.

The Suttons filed for Chapter 13 bankruptcy protection on December 28, 2022.[1] The evidence establishes they did not file a suggestion of bankruptcy with the state court or provide actual notice to Nordike of their bankruptcy filing prior to the January 5, 2023 hearing. The Suttons mailed a notice of the bankruptcy to Nordike on December 28, 2022 and the bankruptcy court mailed a notice of the bankruptcy to Nordike on December 31, 2022.

---

[1] Upon the filing of a bankruptcy case, debtors may obtain an electronically generated notice of the bankruptcy filing that advises creditors of the case number and the effects of the automatic stay. It is common and prudent practice for debtors to generate the notice and serve it directly on a creditor and/or file the notice in pending non-bankruptcy legal actions, particularly in contentious situations, including contempt actions.

At the January 5, 2023 hearing, the Suttons did not notify the state court that they had filed bankruptcy, only stating that they were told by their bankruptcy attorney to not respond to the interrogatories. Eventually, the Suttons' bankruptcy counsel, Stephen Swift ("Swift"), telephoned into the hearing and informed the state court of the pending bankruptcy case. Honorable Shawn Lee Witkus, County Court Magistrate, Fourth Judicial District ("Magistrate Witkus"), was presiding over the contempt proceedings. Since Magistrate Witkus was not familiar with the automatic stay under 11 U.S.C. § 362, he did not stay the matter and scheduled a continued hearing for March 9, 2023, to consider the issuance of a contempt citation due to the Suttons' failure to answer Nordike's second set of written interrogatories. Upon a review of the transcript of this hearing, the Court finds Nordike did not make any statements to the state court after Swift notified the state court that the Suttons had filed bankruptcy.

After the January 5, 2023 hearing, Nordike emailed Swift (the "First Email") confirming receipt of the bankruptcy notice:

> I received the documents today in the mail for this case and I need you to please provide a copy of the petition and supporting documents for review. I will be contacting an attorney to fight the matter and it seems I'm the only one they don't want to pay, plus I'm sure there is a lot of creditors missing. We will address the undervalued rating of their home in this filing. There is plenty of equity to cover the current $24K amount owed, before new legal fees are assessed. I am currently prose [*sic*] until I find the right firm to handle this so I am requesting all filing and supporting documentation on this case to begin the proper response to the lien removal and to argue their ability to repay me over time.

The next day, January 6, 2023, Swift responded to the email (the "Swift Email") which included a letter that informed Nordike of a potential stay violation, stating in relevant part:

> Next, despite this notice, you have continued to pursue our clients to answer the interrogatories propounded to them in your civil lawsuit. You have brought the Suttons up on contempt charges. This conduct is a clear violation of the automatic stay provisions of the Bankruptcy Code. You will have until Friday, January 13, 2023 at noon to forward to me the document showing the withdrawal of your contempt motion.
>
> You must immediately cease all efforts to collect this debt. Further, you must withdraw your contempt motion. In the event you disregard this notice, I will file for sanctions and attorney fees for violation of the automatic stay provisions of

3

> the Code. Pursuant to 11 USC § 362 there are severe penalties which the court may impose. This is literally a situation where the scenario will change significantly: Rather than our clients paying you, you will be paying them, and you will be paying for my services to them as part of this process. I am certain that, with some soul searching, you will decide that this is not what you want.

Later that evening on January 6, 2023, Nordike responded to Swift (the "Second Email"):

> You're an idiot. They violated a court order from 8 Dec and you filed on 22 Dec [*sic*]. I got the docs after the hearing so I was never legally notified prior. They will stand trial on 9 March for contempt of court and the evidence is overehrlming [*sic*] to convict. I'll get a lawyer and we'll see everyone in court for the bankruptcy and trial. I don't bend to threats by attorneys.

Nordike would send another email (the "Third Email") on January 6, 2023, quoted in relevant part below:

> You really shouldn't threaten people with your mistakes, including the judge. When this is all done their 20k will be 50 to 100k, depending on how many improper filings you do toward me. Their last attorney was just like you and the courts ruled in our favor every time. You and your clients have mistepped [*sic*] already and there is nothing legally you can do to me but the courts can to them.
>
> Let me make it clear to you, I'm not doing any recovery efforts every [sic] since I received the letter, well after the court event tool [*sic*] place. I am in compliance and have not violated the rules. You lack any basis there. I'm not in violation of the statue/code.
>
> A decent lawyer would have used a process server on the courts and me due to the short period you filed. I see it was filed the week of Christmas. I'm not worried about you at all. Hence, any malicious filings against me will be met with a demand for legal fees and sanctions against you.
>
> …

> I'll be out of state working starting next week until pretty much the beginning of March so we'll ask for a stay for the creditor hearing until I return.

*Nordike Exhibit D.*

On January 21, 2023, the Suttons commenced this Adversary Proceeding against Nordike and Magistrate Witkus pursuant to 11 U.S.C. §§ 105, 362, 541 and 1327. The initial complaint incorrectly alleged that the state court hearing was held on January 6, 2023, and that Nordike received notice of the bankruptcy filing on January 5, 2023, prior to the hearing, as evidenced by the First Email. Nordike identified this error in his answer and the complaint was only amended after the Court raised this issue and forced the amendment. The Court has serious questions as to whether this error was intentional on the part of Swift to create the claim that the notice of the bankruptcy Nordike received on the evening of January 5, 2023 preceded the state court hearing.

Further, the Suttons alleged that the emails Nordike sent on January 5, 2023, and January 6, 2023, caused them to fear imprisonment if the March 9, 2023 contempt hearing was conducted, which resulted in emotional harm. The complaint finally alleges that Magistrate Witkus violated the automatic stay when he set a hearing for March 9, 2023 on the contempt motion.

The Suttons sought the following relief:

> A) That this Court enjoin Defendant Witkus from entering any orders whatsoever in civil case no. 2017 C 38979 without first obtaining an order for relief from stay from this Court pursuant to 11 USC §§ 105 & 362;
>
> B) That this Court award actual damages, to be determined at trial, against defendant Nordike and in favor of the Plaintiffs;
>
> C) That this Court award punitive damages, to be determined at trial, against defendant Nordike and in favor of the Plaintiffs;
>
> D) That this Court order Defendant Nordike to pay all costs and attorney's fees arising out of this proceeding pursuant to 11 U.S.C. 362(k);
>
> E) That this Court order Defendant Nordike to compensate plaintiffs for the emotional distress incurred by them arising out of his violations of the stay as described above;
>
> F) And such further relief as to the Court would appear just and proper under the circumstances of this case.

5

On January 30, 2023, Nordike filed a Motion to Stay Contempt of Court with the state court to have the contempt proceedings placed on hold until the bankruptcy was resolved or the stay lifted. To date, there have been no further actions in the state court.

On February 24, 2023, the Suttons filed an Unopposed Motion to Dismiss Honorable Shawn Lee Witkus after Magistrate Witkus vacated the March 9, 2023 hearing which this Court granted on February 27, 2023.

Nordike timely filed an answer to the initial complaint. Nordike answered that he first learned of the Suttons' bankruptcy filing during the contempt hearing and that the emails sent to Swift do not constitute a stay violation. Nordike also denied that the hearing occurred on January 6, 2023, stating it had actually occurred on January 5, 2023.

On April 10, 2023, Nordike commenced an adversary proceeding (Case No. 23-01093-JGR) against the Suttons in which he sought a judgment determining the debt owed to him by the Suttons represented by the state court judgment was a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2).

On January 18, 2024, the Suttons filed a Motion to Amend the Complaint, in which they sought to correct the date of the contempt hearing. The Court did not rule on the motion as both adversary proceedings were held in abeyance to allow for the resolution of the Suttons' Chapter 13 plan confirmation process.

Nordike objected to confirmation of the Suttons amended chapter 13 plan as a bad faith filing. The Court conducted an evidentiary hearing on June 5, 2024 and entered an Order Confirming Second Amended Plan on October 10, 2024.

On February 13, 2024, the Suttons filed their First Amended Complaint. This complaint claimed that Nordike violated the automatic stay by: (i) causing a contempt citation to issue; (ii) refusing to withdraw the contempt motion; (iii) insisting that the Suttons answer interrogatories; (iv) scheduling the March 9, 2023 contempt hearing; and (v) continuing to pursue collection of a debt. The relief sought is the same as the first complaint, except the request for the injunction against orders issued by Magistrate Witkus was withdrawn.

On November 13, 2024, at a status and scheduling conference for both adversary proceedings, Nordike dismissed his dischargeability action on the record. The Suttons later indicated that they wished to proceed with the within action, and the abeyance order was vacated.

Nordike timely filed an answer to the amended complaint, denying the allegations. He argued that he did not open the notice of the bankruptcy filing, which was mailed to his residence, until after the January 5, 2023 hearing, and therefore his appearance at that hearing was without actual knowledge of the Suttons bankruptcy filing and not a stay violation. Further, Nordike argues that he did not take any action to prosecute the contempt motion once he received actual notice of the bankruptcy filing and filed a motion

6

to stay the contempt proceedings shortly after. He also argues that the January 5, 2023 and January 6, 2023 email exchange with Swift was not an action to collect the debt.

Following the confirmation of the Suttons' plan, the Court set a trial for March 5, 2025. The trial was bifurcated to resolve the issue of liability prior to the resolution of the issue of damages pursuant to Fed.R.Bankr.P. 7042 and Fed.R.Civ.P. 42(b). The Court also ordered the Suttons to file an amended complaint to correct the critical factual error regarding the date of the contempt hearing.

## JURISDICTION

The Court has subject matter jurisdiction over this core proceeding under 28 U.S.C. § 1334(b) and (e), and 28 U.S.C. § 157(b)(2)(A) and (b)(2)(G) as a core-matter involving the administration of the bankruptcy estate and the automatic stay.

## LEGAL STANDARD

The filing of a bankruptcy petition stays certain actions against the debtor and debtor's property, set forth in 11 U.S.C. 362(a), which states in relevant part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> …
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

Damages for violations of the automatic stay are a remedy available under 11 U.S.C. § 362(k)(1), which provides, "an individual injured by any willful violation of a stay

provided by [11 U.S.C. § 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

> In order to impose sanctions against the Respondents for their violations of the stay, the Court must first find that their actions were "willful." In order for a violation to be "willful," evidence of specific intent to violate the stay is not required. Violations are "willful" if the party knew of the automatic stay and intended to take the actions that violated the stay. A party's good faith belief that it has a right to the property is not relevant to a determination of whether the act was "willful" or whether compensation must be awarded. Even an innocent stay violation (one committed without knowledge of the stay) becomes willful, if the creditor fails to remedy the violation after receiving notice of the stay. In effect, the term "willful" refers to the deliberateness of the conduct, coupled with knowledge of the filing. It does not require an intent to violate a court order. Once a court finds a violation of the stay to be willful, Section 362(h) makes the award of damages for injuries mandatory.

*In re Gagliardi*, 290 B.R. 808, 818-19 (Bankr. D. Colo. 2003) (citing *In re Diviney*, 225 B.R. 762, 774 (10th Cir. BAP 1998). *See also Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007).

In the Tenth Circuit, the debtor bears the burden to prove a willful violation of the automatic stay under 11 U.S.C. 362(k)(1) by a preponderance of evidence. *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163 (10th Cir. 2007).

## ANALYSIS

At trial, the Suttons proffered two distinct theories in support of their amended complaint that Nordike violated 11 U.S.C. § 362(a). First, they argue Nordike's failure to stay and/or withdraw the contempt motion at the hearing before Magistrate Witkus upon learning of the bankruptcy filing was a violation of 11 U.S.C. § 362(a). Second, they argue Nordike's email exchanges with Swift on January 5, 2023 and January 6, 2023 were actions to collect the judgment in violation of 11 U.S.C. § 362(a).

### I. The Failure to Withdraw the Motion for Contempt

The Suttons argue that Nordike willfully violated the stay at the January 6, 2023 hearing by requesting Magistrate Witkus set the March 9, 2023 contempt hearing and not withdrawing his contempt motion promptly thereafter.

Recently, the United States Supreme Court ruled in *City of Chicago v. Fulton*, that 11 U.S.C. § 362(a) "prohibits affirmative acts that would disturb the *status quo* of estate

property." 592 U.S. 153, 158 (2021). Mere retention of the status quo is not a violation under 11 U.S.C. 362(k). *See Id.* Under *Fulton*, Nordike's failure to stay the state court contempt hearing immediately did not violate 11 U.S.C. § 362(k). Nordike did not advance the contempt motion between his notification of the bankruptcy case and the filing of the motion to stay the contempt hearing nor did the Suttons did not present any evidence to the contrary. Once Nordike received actual notice of the bankruptcy at the January 5, 2023 state court hearing, Nordike did not make any further comments during the hearing or take any further action to advance the motion. *Defendant Ex. 3*. Magistrate Witkus scheduled the March 9, 2023 contempt hearing after Swift informed the state court of the bankruptcy case. *Id*.

This case is akin to *Margavitch v. Southlake Holdings, LLC (In re Margavitch)*, Bankr. LEXIS 2784, (Bankr. M.D. Pa. Oct. 6, 2021), cited by the Defendant. In *Margavitch*, a creditor obtained a pre-petition judgment and began garnishing the debtor's bank account, which remained in place when the debtor filed for Chapter 13 bankruptcy protection. The creditor did not remove the garnishment despite the debtor's requests until a plan was confirmed that provided for 100% payment of the creditor's claim. Despite the eventual withdrawal of the garnishment order, the debtor initiated an adversary proceeding under 11 U.S.C. § 362(k) arguing that the creditor willfully violated the automatic stay. The court found that the Supreme Court's reasoning in *Fulton* could be expanded to other sections of 11 U.S.C. § 362(a) and an affirmative act must be taken to constitute a stay violation. This Court agrees Nordike did not take any affirmative action after learning of the bankruptcy and filed a motion to stay the state court contempt hearing after he returned from a business trip.

The *Margavitch* court also considered *In re Iskric*, 496 B.R. 355 (Bankr. M.D. Pa. 2013) to determine what constituted a disturbance of the status quo. *Margavitch*, Bankr. LEXIS 2784, at *18. In *Iskric*, a debtor was imprisoned post-petition on a pre-petition bench warrant that was issued in a contempt action for failure to respond to post-judgment interrogatories. *Id.* The *Iskric* court found that the creditor had violated the automatic stay because it did not seek to vacate the bench warrant when the debtor filed for bankruptcy, thus allowing the status quo to be upset. *Id.* Unlike *Iskric*, Nordike stayed the state court contempt hearing before the status quo was upset. The Suttons were not required to attend the state court contempt hearing, were not sanctioned or imprisoned, and suffered no consequences.

When taken together, *Fulton, Margavitch, and Iskric* stand for the proposition that a willful stay violation occurs when a party takes affirmative action to continue a case or fails to act to preserve the status quo resulting in adverse consequences to the debtor. Neither occurred in the instant case.

The Suttons cite *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1212 (9th Cir. 2002) for the proposition that a creditor has an affirmative duty to promptly discontinue any post-petition collection actions to avoid a violation of the automatic stay. *Eskanos* was decided prior to *Fulton*. In *Eskanos*, ten days after the debtor filed bankruptcy, on August 28, 2000, the creditor filed a collection action against the debtor. Following the

9

filing of the action, the creditor ignored communications from the debtor regarding the bankruptcy filing. The court found that the creditor had actual knowledge of the bankruptcy no later than September 6, 2000. The creditor did not withdraw the collection action until September 29, 2000 and made no attempt to explain the delay. The court found that because the creditor was aware of the bankruptcy, failed to dismiss the collection action, and made no attempt to communicate with the debtor until after the automatic stay violation adversary proceeding was filed, the automatic stay had been violated. The court further found that because the creditor did not indicate it was attempting to cure the stay violation, the act was willful.

This case can be distinguished from *Eskanos*. The contempt citation was issued prior to the Suttons' bankruptcy filing and was not a new post-petition action under 11 U.S.C. § 362(a). At trial, Nordike credibly testified that he was unaware of the Suttons' bankruptcy case until Swift notified the parties at the January 5, 2023 state court hearing and did not open the bankruptcy notice until that evening. The Court finds it plausible that the notice did not reach Nordike until January 5, 2023, as the Suttons filed their petition over the holiday period when mail service is not as efficient and people are traveling.

Nordike testified that after he received notice of the bankruptcy, he notified Swift in the Third Email that he'd "be out of state working starting next week until pretty much the beginning of March so we'll ask for a stay for the creditor hearing until I return." Nordike testified that he struggled to locate creditor's counsel during the following week and left for work on January 12, 2023. Nordike testified that he works as a defense contractor for the United States government and when he travels for work, he is in a secure facility and forbidden by law to contact the outside world, which hindered his search for counsel. Nordike further testified that as soon as he returned on January 24, 2023, he resumed his search, eventually hiring his current counsel on January 27, 2023. The next business day, January 30, 2023, he filed the motion to stay the contempt proceedings. A brief timeline of the events is below.

| Thursday, January 5, 2023 | Magistrate Witkus and Nordike are notified of the bankruptcy at the state court contempt hearing and Nordike emails Swift to acknowledge the Suttons' bankruptcy. |
|---|---|
| Friday, January 6, 2023 | Nordike begins searching for bankruptcy counsel and emails Swift, "we'll ask for a stay for the creditor hearing." |
| Thursday, January 12, 2023 | Nordike leaves for his work trip and no longer has the ability to contact counsel. |
| Saturday, January 21, 2023 | The Adversary Proceeding is filed. |
| Tuesday, January 24, 2023 | Nordike returns from the trip and resumes searching for counsel. |
| Friday, January 27, 2023 | Nordike hires current counsel. |
| Monday, January 30, 2023 | Nordike files Motion to Stay. |

As soon as Nordike became aware of the bankruptcy petition, he stated his intent to stay the hearing in the Third Email and informed Swift of his unavailability in the coming days. The creditor in *Eskanos* avoided communication with the debtor and made no indication that the stay violation was being remedied. Subtracting the days Nordike was unavailable in a secure government facility, he filed the stay motion on the eighth working day after notice of the bankruptcy. Nordike was prosecuting the state court litigation pro se and did not have an attorney to file for a stay on his behalf during his absence.

Nordike's stated intention to stay the matter, his work situation which prohibited him from communicating with prospective counsel, counsel for the Suttons or the state court, and his prompt action to remedy the violation upon his return from the work trip evidence that the delay in filing the stay motion did not amount to a willful violation under 11 U.S.C. § 362(k). Simply put, he took no affirmative action in the state court civil action after receiving actual knowledge of the bankruptcy other than to move to stay the March 9, 2023 contempt hearing on a reasonably timely basis under the circumstances.

## II.     The Email Exchange Between Nordike and Swift

The Suttons next argue that Nordike threatened them with imprisonment, and damages despite his knowledge of the bankruptcy case by sending emails on January 5, 2023 and January 6, 2023.

There was no threat of imprisonment in the emails Nordike sent to counsel for the Suttons. Nordike's First Email merely requests documentation related to the bankruptcy and stated his intent to "fight the matter" and is not a stay violation. The Second Email and Third Email, however, need to be further analyzed. In the Second Email, Nordike stated that the Suttons "would stand trial on March 9th." In the Third Email, Nordike stated that "[w]hen this is all done their 20k will be 50 to 100k, depending on how many improper filings you do toward me" and "any malicious filings against me will be met with a demand for legal fees and sanctions against you."

The Second Email implied that Nordike would continue to prosecute the contempt motion on March 9, 2023. The Court finds this a mere statement of fact, as Magistrate Witkus had set the state court contempt hearing on that date. Further, the Third Email in response to Swift's Email concludes, "I'll be out of state working starting next week until pretty much the beginning of March so we'll ask for a stay for the creditor hearing until I return." The Second Email and Third Email were sent just an hour apart and the Suttons did not present evidence that their course of action was affected during this period. In advising the Suttons that he intended to stay the action, Nordike retracted the perceived threats in the Second Email. The Suttons presented no evidence of how they reacted to the Second Email or Third Email. Nordike did not take any affirmative action to advance the contempt motion, as required under *Fulton*, and the contempt hearing was stayed upon his return from his work trip. Finally, Nordike moved to stay the hearing 40 days prior to the scheduled date.

11

Nordike was appearing before the state court pro se as an unsophisticated legal party, and was unaware of the protections of the automatic stay when he sent the emails.[2] In response to the Swift Email, he clarified, "I'm not doing any recovery efforts every [*sic*] since I received the letter". Once he learned of the existence of the automatic stay and the legal ramifications of a violation, he stated that he intended to stay the contempt hearing and that he was not attempting to collect any debt. Nordike's statement in the Second Email is not sufficient to constitute a willful violation of the automatic stay.

Turning to the statements in the Third Email regarding "improper" and "malicious" filings, the Court finds that these statements are not an attempt to collect the pre-petition judgment or commence a new action against the Suttons outside the bankruptcy court. Instead, they are words that are part of a contentious email exchange. Words are an expression of intent. Actions are concrete manifestations.

Thus, when you consider the email exchange as a whole, the words between Nordike and Swift under these circumstances are not a violation of the stay, because Nordike expressly mitigated any threats when he stated he would not attempt further recovery of the debt and would stay the contempt hearing. Nordike filed an adversary proceeding after he became aware of the bankruptcy case, evidencing his awareness of the requirements of the Bankruptcy Code and his intention not to violate the automatic stay.

The bulk of the case law cited by the parties pertains to actions filed post-petition, state court hearings that actually occurred in violation of the stay, or attempts to recover tangible property of the estate, and as such, are not relevant here.

## CONCLUSION

The Suttons and Nordike have been embroiled in litigation for several years. This entire fiasco could have been avoided had the Suttons, who knew about the January 5, 2023 hearing, had provided actual notice to either Nordike and/or the state court of their bankruptcy filing. For all the foregoing reasons, the Court concludes that Nordike did not willfully violate the automatic stay and that Nordike acted reasonably to stay the pending contempt hearing as promptly as his work situation allowed, and did not advance the contempt motion in the interim. Nordike's statements are not actions that meet the willful standard required to hold a party in contempt for violation of the automatic stay because at the end of the exchange he indicated he would not be pursuing any further recovery efforts.

THEREFORE, for the above reasons,

---

[2] Addressing a violation of the Discharge injunction provided under 11 U.S.C. § 524, the Supreme Court held a creditor cannot be held in civil contempt unless "there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 557, 139 S. Ct. 1795, 1799 (2019). It is possible a similar analysis may be extended to alleged violations of the automatic stay.

IT IS ORDERED that judgment shall enter in favor of Defendant Michael Nordike and against Henry Sutton and Tabatha Sutton on the claim under 11 U.S.C. § 362(a)(2)(A), each party to pay their own fees and costs.

DATED this 16 day of May, 2025.

BY THE COURT:

_____
Hon. Joseph G. Rosania, Jr.
United States Bankruptcy Judge